UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

| | | |
|---|---|---|
| PAUL HAROLD NEWTON, JR. | ) | |
| | ) | Civil Action No. 3:06-42-KKC |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENTUCKY STATE POLICE, et al. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants | ) | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

I.  **PROCEDURAL BACKGROUND**

Plaintiff Paul Harold Newton, Jr. ("Newton") filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on June 30, 2006. [R. 1] On July 12, 2006, the Court granted his application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and directed Newton to demonstrate exhaustion of his administrative remedies pursuant to then-prevailing Sixth Circuit authority. [R. 4, 5] When Newton's response indicated that, notwithstanding abundant informal complaints about his treatment, he had not formally filed a grievance regarding the issues raised in his Complaint because the grievance officer was named as a defendant in the suit, the Court dismissed the Complaint without prejudice. [R. 10] Newton appealed that decision to the Sixth Circuit [R. 12], which reversed in light of the United States Supreme Court's intervening decision in *Jones v. Bock*, 127 S. Ct. 910, 912 (2007). [R. 16]

Upon remand, because Newton had not identified any defendant by name, the Court first directed Newton to provide the Court with the name and address of any person he wished to sue in order to permit the Court to effect service of process on his behalf. [R. 19] Using the information

1

provided in his response [R. 20], the Court directed the United States Marshal to serve the defendants identified by Newton. [R. 21] This matter is before the Court for decision upon several dispositive motions filed by the defendants.

II.     FACTUAL BACKGROUND

In his Complaint,[1] Newton alleges that on July 1, 2005, when he drove home for lunch, he observed several police officers searching his home. The residence appears to have been rented by his girlfriend, but Newton and his 9-year old daughter stayed there on a regular basis. Newton alleges that defendants Decker, Calhoun, Rayburn, and Dunn, all law enforcement officers for the Kentucky State Police ("KSP"), were already searching the home, garage, and his truck upon his arrival. When asked if they had a search warrant, the officers indicated that they did not, but were in the process of obtaining one. When a warrant was obtained later that afternoon, the officers discovered marijuana plants and growing equipment in the garage, as well as marijuana cigarettes in the cabin of Newton's truck. It is unclear if Newton was arrested or charged at this time.

On August 17, 2005, Newton alleges that he was sleeping in a new residence when police entered the house in the middle of the night to search the property and place him under arrest. Newton alleges that the officers refused to permit him to bring with him certain prescription medicine, arrested him, and took him to the Woodford County Detention Center where he remained overnight. The next day, Newton was moved to the Franklin County Regional Jail ("FCRJ"). It appears that Newton remained in the FCRJ from August 18, 2005 to the date he filed his Complaint

---

[1] Because the totality of Newton's factual allegations is not set forth succinctly in any one pleading filed by Newton or the defendants, the Court's factual summary is drawn from Newton's Complaint, the defendants' moving papers, the documentary exhibits attached thereto, and Newton's responses to the dispositive motions that have been filed. While the parties may dispute the legal significance to be attributed to the facts, there does not appear to be any significant disagreement as to the facts material to the issues raised in the defendants' motions.

in this action, June 30, 2006, until what appears to be his release in June 2007.

For ease of reference, the Court will summarize Newton's allegations regarding mistreatment by jail personnel and the Franklin County court system by subject matter.

Newton first alleges that the conditions of his confinement were unsatisfactory in several ways. Newton began his incarceration at the jail in a "detox" cell. Newton appears to allege that he remained in the cell from approximately August 23, 2005 to mid-September 2005, and was naked, with no clothing, towels, soap, a toothbrush, or toilet paper. Newton continues that on September 19, 2005, officers Hardin and Mazzacone removed him from this cell, and while he showered, cleaned his cell with bleach. Newton alleges that the cell still smelled strongly of bleach upon his return, causing his eyes and skin to burn. On September 29, another inmate was placed in this cell whom Newton alleges was suffering withdrawal symptoms from a severe narcotic addiction, placing Newton in danger.

Newton was subsequently moved to the medical "pod," where, on January 10, 2006, another inmate backed up the toilet by filling the bowl with a sheet. Guards again poured bleach on the floor and gave inmates mops to clean up the refuse, but the fumes from the bleach caused skin irritation and headaches amongst the inmates, including Newton. On January 12, 2006, an inmate cut himself, spraying blood on the walls and Newton's pillow, which Newton alleges placed him at risk. When Newton stepped out of his cell and repeatedly protested to guards, he was sanctioned with 15 days in segregation following a disciplinary hearing. Newton further contends that during the Spring of 2006, he was not allowed to exercise or attend religious services. Following his return to the general population of the jail, Newton alleges that from mid-March forward that he and other inmates where required to eat in unsanitary conditions because they had to re-use eating utensils.

Newton also complains regarding allegedly excessive force used by guards on a number of occasions. Newton alleges that on August 19, 2005, he was assaulted by 3 officers, one of whom he identifies as defendant Read. Newton alleges that later that day defendant Grimes placed handcuffs on him in manner which was painful. On September 19, 2005, Newton indicates that officer Hardin grabbed his arm and pulled it behind him sharply while officer Mazzacone stood by. On September 26, 2005, Officer McKeehan grabbed Newton's left arm and forced it behind his back, then put him in a choke hold before placing Newton back in his cell.

Newton further complains that he received inadequate and inappropriate medical care. Throughout the course of his incarceration, Newton repeatedly requested medical care for the injuries he suffered during the altercations set forth above, but alleges that it was denied. He also alleges that commencing during some portion of September and October 2005, someone must have been drugging him without his knowledge or consent, causing him to sweat profusely notwithstanding the cold temperatures in his cell, and to not close his eyes for over a week. Newton also indicates that throughout his incarceration nurses were administering excessive doses of medication designed to address his high blood pressure. Newton indicates this medication caused him to become sick, suffer severe headaches, numbness and/or shaking in his hands, and chest pains. Newton indicates that at times he refused to take the medication, causing staff to threaten him.

Newton also complains regarding the conduct of the criminal proceedings against him. On August 19, 2005, Newton appeared at a hearing before Franklin Circuit Court Judge William Graham. The hearing was attended by Commonwealth Attorney Larry Cleveland. Although Newton had retained private attorney Gatewood Galbraith to represent him in prior proceedings, Galbraith did not attend this hearing. It appears that at this hearing Newton was arraigned on

4

charges of felony cultivation of marijuana and of violating the terms of a bail bond. At a subsequent hearing, public defender Matt Browning was appointed to represent Newton, although at times public defender Scott Getsinger appeared on Newton's behalf.

Newton alleges that at numerous court appearances throughout Fall 2005 and Spring 2006, he was denied the opportunity to complain about his mistreatment at the jail to the presiding judge. In a September 2005 court appearance, Judge Wingate told Newton to remain silent when he tried to speak out about his treatment by officers at the jail. Newton alleges similar events transpired on September 27, 2005; October 25, 2005; January 20, 2006 before Judge Graham; and May 8, 2006 before Judge Crittenden. Newton further alleges that on separate occasions in February 2006, Judges Graham and Crittenden admonished prosecutors that Newton's case needed to proceed to trial, but that prosecutors failed to abide by that direction. Newton separately alleges that throughout his incarceration his repeated demands to talk with his attorney were denied.

Finally, Newton alleges that on several occasions Dr. Peter Schilling came to the jail to conduct an examination of Newton to determine his competency to stand trial. Newton alleges that the integrity of the examinations was compromised because officer Reed, whom Newton alleges had previously assaulted him, was visibly watching the examination through a window.

In response to this Court's direction that Newton explain what efforts he made to file grievances regarding the events described above with prison staff, Newton completed and filed a court-supplied Form 118. [R. 9] In that document, Newton indicated that the jail had a grievance procedure, which he invoked by complaining about his treatment to approximately 12 different officers, Jailer Ted Hammeister, and medical staff, including 4 different nurses.

5

**III.   DISCUSSION**

   **A.   The Applicable Legal Standards.**

      **1.   Motions to Dismiss under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004). A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element necessary to sustain a recovery under some viable legal theory. *Weiner. v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). But the complaint must be dismissed if it undoubtedly fails to allege facts sufficient to state a facially-plausible claim. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007).

      **2.   Motions for Summary Judgment under Rule 56(c)**

A motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) tests the viability of the plaintiff's claim. A defendant's motion asserts that at least one essential element of plaintiff's claim is not supported by legally-sufficient evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The defendant does not need his own evidence to support this assertion, but need only point to the absence of evidence favoring the plaintiff. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). In response, the plaintiff cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrate that factual questions remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on

which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties, but views the evidence in a light most favorable to the plaintiff with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must ultimately determine whether the evidence is so one-sided that it would require a directed verdict for the defendant because the plaintiff has failed to present sufficient evidence to sustain a jury verdict in his favor with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### B.     The Kentucky State Police Officers are Entitled to Summary Judgment.

Kentucky State Police ("KSP") Officers Decker, Calhoun, Rayburn and Dunn filed a Motion for Summary Judgment [R. 25] in which they argue that the only apparent claim asserted against them arises out of their search of Newton's residence on July 1, 2005. The officers note that following Newton's indictment on felony charges for cultivating marijuana, he filed a motion to suppress the evidence obtained from that search as obtained in violation of the Fourth Amendment. The Franklin Circuit Court denied that motion in an opinion entered on May 29, 2007. Shortly thereafter, on June 8, 2007, Newton entered an *Alford* plea to the charge, and an appropriate judgment was entered on June 15, 2007. On September 17, 2007, Newton was sentenced to time served. *Commonwealth v. Newton*, 05-CR-167, Franklin Circuit Court.

The KSP officers first contend that to the extent Newton is attempting to assert a claim against them arising out of the search of the property, that claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a plaintiff cannot assert a constitutional

7

claim under Section 1983 which would call into question the validity of a criminal conviction unless and until that conviction had been reversed on direct appeal, expunged, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 487. The Court agrees that Newton's allegations against the KSP officers amounts to a challenge to the propriety of the search of his property, which under *Heck* may not be asserted unless and until Newton convinces a court of competent jurisdiction to vacate that sentence on grounds which undermine the validity of the search. *Johnson v. Arndt*, 2005 WL 348409 (9th Cir. 2005) (arrestee was barred under *Heck* from bringing illegal seizure and wrongful arrest claims against police officers where success on claims would have necessarily implied invalidity of his convictions, and arrestee had not demonstrated that those convictions had been overturned); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (same).[2]

The KSP officers further contend that because the validity of the search was actually litigated and determined adversely to Newton by the Franklin Circuit Court, *Allen v. McMurry*, 449 U.S. 90 (1980) requires the court to afford preclusive effect to this determination to the same extent it would be afforded under Kentucky law. The genesis of this requirement is found in the Full Faith and Credit Act, which requires a federal court to afford preclusive effect to a state court judgment to the same degree it would be afforded such effect by a state court located in the jurisdiction where the federal court sits. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). The question remaining then, which the defendants do not address expressly, is whether

---

[2] Although the KSP officers seek dismissal of Newton's claims *with* prejudice on this ground, a proper understanding of *Heck* makes clear that such dismissal would have to be without prejudice. *Heck* held that a plaintiff's assertion of his claim is *premature* until the underlying conviction is vacated or called into question. The Court's conclusion that Newton's claim is barred under *Heck* leaves open the possibility that Newton could convince a court to vacate his criminal conviction, removing the *Heck* bar to its assertion. Newton would, of course, face a possible time bar. *Wallace v. Kato*, 127 S.Ct. 109 (2007).

8

Kentucky courts afford preclusive effect to issues actually decided in criminal proceedings in a subsequent civil suit. Kentucky courts and the Sixth Circuit have answered this question in the affirmative. *Gossage v. Roberts*, Ky.App., 904 S.W.2d 246, 248 (1995) ("under proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later proceedings."); *Donovan v. Thames*, 105 F.3d 291, 295 (6th Cir. 1997). Because Kentucky courts would find Newton's present challenge to the legality of the search barred by the Franklin Circuit Court's decision on the subject, the Full Faith and Credit Act requires this Court to do so as well. *Donovan*, 105 F.3d at 106.

Finally, in his response [R. 63] Newton alleges that following the search one of the KSP officers drove his truck away, where it was kept for an extended period. Newton further alleges that when he retrieved the truck it was worth little more than scrap value. In their reply, [R. 65] the KSP officers note that marijuana and drug paraphernalia were found in Newton's truck, and accordingly the truck was seized both to preserve evidence and as subject to possible forfeiture under KRS 218A.410. In addition, the attached affidavit of Shawn Darby, the case officer assigned to the investigation, states that KSP had been advised by the police department in Lexington, Kentucky that the truck had possibly been involved in a hit and run accident in Lexington. KSP subsequently released the truck from its custody in May 2006 and advised Newton by letter that he could retrieve the truck and pick it up. The officers contend that, at a minimum, they are entitled to qualified immunity regarding their handling of Newton's pickup truck.

The Court need not determine whether the KSP officers are entitled to qualified immunity because Newton has failed to make any allegation that this conduct violated his constitutional rights. While a court will construe the allegations made by a plaintiff proceeding *pro se* liberally, "the court will not read causes of action into the complaint which are not alleged." *Superior Kitchen Designs,*

9

*Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F.Supp.2d 140, 148 (D.Mass. 2003). Newton does not make any argument that this allegedly negligent or out-of-the-ordinary treatment of his vehicle violated his constitutional rights, nor can the Court readily infer a plausible argument to this effect from the facts which Newton does allege. Having failed to make out a colorable claim in this regard, *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived … It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."), the Court will grant the KSP officers' motion for summary judgment.

    **C.**    <u>**Newton's Claims against State Judges and Prosecutors will be Dismissed.**</u>

Franklin Circuit Court Judges Thomas Wingate, Roger Crittenden, and William Graham; Commonwealth Attorneys Larry Cleveland and Ricky Sparks; and Franklin County Regional Jail employee Shane McKenzie have filed a Motion to Dismiss [R. 27] in which these defendants allege that the official capacity claims against them are barred by the Eleventh Amendment and the *Rooker-Feldman* doctrine, and that the claim against McKenzie fails to state a claim. In his response [R. 64], Newton reiterates his allegations that he was effectively prohibited from participating in his own defense by the refusal of the judges to hear his concerns regarding his treatment in jail and because he was never provided a copy of the indictment on the charges against him.

As a threshold matter, the *Rooker-Feldman* doctrine does not present a barrier to the assumption of subject matter jurisdiction over Newton's claims, because his claims, liberally construed, do not amount to an attack upon his criminal conviction, but rather challenge the conduct of judges and prosecutors during those proceedings. *See Exxon Mobil Corp. v. Saudi Basic*

*Indus. Corp.*, 544 U.S. 280 (2005) (*Rooker-Feldman* doctrine does not bar a subsequent action which merely calls into question by inference propriety of the prior state court judgment, but only bars those claims which in effect identify the prior state court judgment as the source of the claimed injury; although the former type may be barred by principles of claim and issue preclusion); *cf. Brown v. First Nat. Mtg. Corp.*, 2006 WL 3289232, *3 (6th Cir. 2006) (unpublished disposition) (*Rooker-Feldman* does not prevent plaintiff from suing participant in prior state court proceeding for allegedly filing a false affidavit resulting in an adverse determination against plaintiff).

However, to the extent Newton asserts claims against state court judges and prosecutors in their official capacity,[3] those claims are clearly barred by the Eleventh Amendment. When a plaintiff sues a state officer in his or her official capacity, the state itself is the actual defendant. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Because the Eleventh Amendment to the Constitution of the United States deprives a federal court of jurisdiction to entertain a suit against a state and its agencies, *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), such a claim cannot be maintained. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992). Although the defendants have not argued that the Franklin Circuit Court and the Commonwealth's Attorneys Office are "arms of the state" for Eleventh Amendment

---

[3] Newton did not specifically allege the capacity in which he sued these defendants, although it was his duty to do so. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989). Under such circumstances, a court evaluates whether "the course of proceedings" clearly put the defendants on notice that plaintiff sought to impose liability upon them personally. *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir.2001). In this case, there was no indication that Newton sought to impose personal liability on these defendants, and the Court therefore must presume they were sued in their official capacities. *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir.1991). The Court notes parenthetically that even if this were not so, because the actions of the judges and prosecutors alike were taken in the exercise of their judicial and prosecutorial functions at hearings in Newton's criminal case, the judges would be entitled to absolute judicial immunity, *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (judges are absolutely immune from civil suits under Section 1983 for money damages for actions taken as a judge), and the prosecutors would be entitled to absolute quasi-judicial immunity, *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutor is absolutely immune for acts undertaken in his or her capacity as an advocate for the state which are closely associated with judicial proceedings).

11

purposes, *Gragg v. Ky. Cab. for Workforce Devel.*, 289 F.3d 958, 963 (6th Cir. 2002) ("the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that is an arm of the state."), this is unquestionably the case as a matter of Kentucky law. *Cf. Watkins-El v. Ryan*, 2007 WL 1229406, **5 (2007) (unpublished disposition) (Kentucky circuit court judge sued in official capacity entitled to Eleventh Amendment immunity); *McKee v. Fayette Circuit Court*, 1995 WL 559331, **2 (6th Cir. 1995) (unpublished disposition) (claim against District Court for Fayette County, Kentucky barred by Eleventh Amendment); *Thornton v. Commonwealth of Kentucky*, 2007 WL 1662690, **6 n.4 (W.D. Ky. 2007) (unpublished disposition) (noting that Kentucky circuit courts are created by the Kentucky Constitution and compensation for circuit court judges is determined by the General Assembly and paid out of the State Treasury).

Finally, Newton's allegations against Defendant McKenzie fail to state a claim upon which relief may be granted. In his Complaint, Newton's only allegation against McKenzie is that, upon his request, she sent him a copy of the bonds he posted. Newton's fails to offer any explanation as to how this conduct violated his constitutional rights, and the Court is unable to discern any colorable constitutional claim even as a matter of pure conjecture. This claim will therefore be dismissed as well. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

### D. Newton failed to Exhaust his Claims against Jail Personnel.

Defendants Abram; Flowers; Stevens; Mahoney; Hammarmeister; Read; Rogers; Mazzacone; Grimes; Banta; Officer Hardin and McKeehan filed a Motion for Summary Judgment [R. 70] in which they alleged that Newton failed to exhaust his administrative remedies as required by 28 U.S.C. § 1997e. These defendants have filed the affidavit of Billy Roberts, the current Jailer of the Franklin County Regional Jail, in support of their motion. In his affidavit, Roberts indicates that he

12

reviewed the jail records for the period during which Newton was incarcerated there, and that Newton filed no formal grievances during that time. [R. 70-4] Roberts includes with his affidavit a copy of the jail's grievance policy and procedure. Summarized, that procedure requires an inmate to report any event or conduct which the inmate believes to be illegal, contrary to jail rules, or otherwise improper to a grievance officer within 48 hours of the event to be investigated and resolved. If the inmate is not satisfied with the result, the inmate may appeal to the Jailer for further review. The policy expressly provides that "[n]o prisoner shall fear against reprisal for initiating grievance procedure in an attempt to resolve legitimate complaints." [R. 70-4] Newton filed no response to this motion.

By failing to respond to the motion for summary judgment, particularly in the face of a clear obligation to do so under the Local Rules of this Court and Newton's own practice of responding to three previously-filed dispositive motions, Newton is conclusively presumed to have waived his opposition to this motion, and the Court will dismiss the claims against these defendants on this basis. *Humphrey v. United States*, 2008 WL 2080512 (6th Cir. 2008) (unpublished disposition) (district court authorizes to dismiss action where plaintiff fails to respond to dispositive motion) (*citing Scott v. State of Tennessee*, 1989 WL 72470, **2 (6th Cir. 1989) (unpublished disposition) ("if a plaintiff fails to respond or otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion.").

In addition, the Court adheres to its prior determination [R. 5] that Newton's statutory obligation under the PLRA to exhaust his administrative remedies was not excused merely because one of the officers about whom he complained was the grievance officer. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 997-98 (6th Cir. 2004) (vague and conclusory allegations by inmate that he

13

did not file grievance out of fear of reprisal did not excuse failure to satisfy exhaustion requirement).

### E. Newton's Medical Claims must be Dismissed.

Defendants Sherrow; Bennis; Trivette; and Waldridge filed a Motion for Summary Judgment [R. 67] on the ground that (1) Newton failed to exhaust his administrative remedies as required by 28 U.S.C. § 1997e by filing inmate grievances; and (2) Newton's allegations do not support a claim of deliberate indifference to his serious medical needs under the Eighth Amendment.

With respect to the first argument, these Defendants point to Newton's statements in his Complaint [R. 1-2] and subsequent documents [R. 9], in which he indicates his awareness that the jail had an inmate grievance procedure in place, yet he declined to use it because one of the persons about whose conduct he would have complained was a grievance officer, presumably responsible for reviewing inmate complaints.

With respect to the second argument, these Defendants argue that notwithstanding Newton's argument that he was denied medical care that he requested on an almost daily basis for months, the jail's documentary record indicates that Newton made only three formal requests for medical attention. These Defendants further contend that Newton's assertion that the blood pressure medicine he was given was not medically necessary or appropriate amounts to nothing more than a disagreement with the course of treatment prescribed by his physicians, and is therefore not actionable under the Eighth Amendment. Finally, Newton's claim that he requested that x-rays of his face and jaw be taken after an alleged assault by guards but that his request was denied is contradicted by the documentary record. In support of their arguments, these Defendants include extensive documentation which reflects Newton's persistent refusal to take his blood pressure medicine because it made him feel ill and repeated noncompliance with the low-fat, low-salt diet he

was prescribed to control his weight and blood pressure. [R. 67-3, 4, 6] Those records also reflect that the x-rays taken of Newton's jaw and face on August 19, 2005, were reviewed by a physician and showed no sign of traumatic injury. [R. 67-6, 7]

In his Response [R. 69], Newton primarily reiterates his allegations that he was not allowed to take his prescription medications for blood pressure and hypertension, was given other medications that he had not taken prior to his arrival at the jail, and that medical staff failed to treat him after the alleged assault by officers in August 2005. In their Reply, the Defendants point out that Newton offers no explanation for his failure to exhaust his administrative remedies with respect to his medical claims, nor challenges their factual allegation that he submitted only three sick call slips.

Federal law requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999). The Complaint and other documents filed by Newton [R. 1-2, 9] conclusively demonstrate that he failed to exhaust any of his claims prior to filing suit. Because Newton did not satisfy the exhaustion requirement prior to filing his complaint, and cannot do so in timely fashion at this juncture, his claims must be dismissed with prejudice. 42 U.S.C. § 1997e(a); Baxter v. Rose, 305 F.3d 486, 488-89 (6th Cir. 2002); *Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (PLRA's exhaustion requirement is not satisfied unless the inmate complies with the agency's deadlines and other critical procedural rules).

The Court further concurs with the Defendants' assertion that the objective medical evidence in the record rebuts any allegation that they were deliberately indifferent to Newton's serious medical needs in violation of the Eighth Amendment. The Court assumes for purposes of this

discussion that all of the medical matters about which Newton complains are sufficiently "serious" to implicate Eighth Amendment concerns, and thus the "objective" component of such a claim is satisfied. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But to state a viable claim that prison officials acted with "deliberate indifference" to that medical need, a prisoner must demonstrate that they were actually aware of a substantial risk to an inmate's health and knowingly failed to respond reasonably to that risk. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Such a state of mind may be shown where prison officials intentionally deny medical care, delay access to it without justification, or interfere with treatment once prescribed. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

With respect to Newton's allegations that medical care was repeatedly denied or delayed, this contention is rebutted by the voluminous medical records submitted by the Defendants, which indicate that Newton received substantial and ongoing treatment throughout the Fall of 2005 and during the course of his lengthy incarceration. Newton's complaints regarding the need for further x-rays of his face in August 2005 are similarly without merit. The Defendants' records indicate that an x-ray was taken of Newton's face and jaw on August 19, 2005, and both the initial and subsequent review of those films by a physician indicated that he did not suffer any broken bones. [R. 67-6, 7] Under such facts, "[t]he question of whether an X-Ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Finally, Newton appears to challenge the propriety of some of the medications he received during his incarceration. The medical records submitted by the Defendants show that upon his

initial arrival at the jail, medical staff conducted an interview with Newton to determine his medical history, what medications he was taking, and any allergies he suffered. It appears that certain prescription medications being taken by Newton prior to his incarceration were changed to functionally-equivalent alternatives because the original prescriptions were not stocked in the jail's formulary or were otherwise not available to medical staff. While Newton repeatedly complained that the blood pressure medicine he was prescribed made him sick or nauseous, he does not contend it was not medically effective. The adverse side effects, while regrettable, do not amount to a violation of his constitutional rights. *See Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996); *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994) (an inmate does not have the right to choose his medical treatment, and the mere fact that he disagrees with the treatment he is given does not serve to establish that his medical care was inadequate, let alone that those treating him acted with deliberate indifference). Accordingly, Newton's medical claims will be dismissed. *Davis v. Powell*, 110 Fed.Appx. 660 (6th Cir. 2004) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound is state tort law.").

### F.     Remaining Defendants.

As an administrative matter, the Court notes that the relief granted in this Memorandum Opinion and Order will leave the Kentucky State Police, the Franklin County Regional Jail, and the Franklin County Courthouse remaining as a purely nominal Defendants. The Court will direct the Clerk of the Court to dismiss these Defendants from this action as Newton did not identify them as Defendants in his Response [R. 20] to this Court's Order [R. 19] to identify the defendants against which he wished to proceed. These entities would, of course, also be entitled to dismissal of any

claim against them on the same grounds presented above: the Kentucky State Police and the Franklin County Courts are entitled to sovereign immunity under the Eleventh Amendment, and the Franklin County Regional Jail (or, more appropriately, Franklin County) is entitled to dismissal for Newton's failure to exhaust his administrative remedies and the substantive deficiencies in his claims.

In addition, an individual defendant remains: Linda Shannon, a member of the medical staff at the Franklin County Regional Jail, was identified as a defendant by Newton [R. 20], but the United States Marshal was unable to obtain service of process upon her based upon the information provided by Newton. [R. 33] As the Court previously noted, [R. 20] it is the obligation of a plaintiff proceeding *in forma pauperis* to provide the Marshal's Office with sufficient information to obtain service of process upon a named defendant. *Byrd v. Stone*, 94 F.3d 217 (6th Cir. 1997). Even ignoring this procedural shortcoming, the Court notes that because Newton has been granted *pauper* status under 28 U.S.C. § 1915(b), [R. 4] the Court has an ongoing duty to dismiss a claim if it determines, at any juncture, that the claim is frivolous or malicious, fails to state a claim on which relief may be granted, or otherwise seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Here, the Court has concluded that Newton's medical claims must fail both for his failure to properly exhaust his administrative remedies and on the merits. Because the same conclusions apply with equal force to defendant Shannon, under Section 1915(e)(2)(B) the claim against her must be dismissed as well.

IV. **CONCLUSION**

Accordingly, **IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by Defendants Decker; Calhoun; Rayburn;

and Dunn [R. 25] is **GRANTED**.

2. The Motion to Dismiss filed by Defendants Wingate; Crittenden; Graham; Cleveland; Sparks; and McKenzie [R. 27] is **GRANTED**.

3. The Motion for Summary Judgment filed by Defendants Abram; Flowers; Stevens; Mahoney; Hammarmeister; Read; Rogers; Mazzacone; Grimes; Banta; and McKeehan [R. 70] is **GRANTED**.

4. The Motion for Summary Judgment filed by Defendants Sherrow; Bennis; Trivette; and Waldridge [R. 67] is **GRANTED**.

5. The claims against Defendants Kentucky State Police; Franklin County Regional Jail; Franklin County Courthouse; and Linda Shannon are **DISMISSED as DEFENDANTS** herein.

6. The Court will enter an appropriate Judgment.

Dated this 11th day of March, 2009.

**Signed By:**
*Karen K. Caldwell*
**United States District Judge**